The next case for argument this morning is 14-1386 Shenyang Yuanda v. U.S. This appeal concerns the Department of Commerce's decision to apply anti-dumping and countervailing duties on imported curtain wall units, which are effectively windows with glass that are pursuant to the anti-dumping and countervailing duty order on aluminum extrusions. On page 21 of the blue brief, your heading says, Commerce unlawfully expanded the scope of the orders on aluminum extrusions to include curtain wall. Isn't it true that in 2010 Commerce made a preliminary determination that your curtain wall units and components fell within the scope of the orders? I would respectfully disagree, Your Honor. What the request was at the time was on aluminum extrusion parts, and Commerce analyzed it under the pitch of curtain walls. They mentioned curtain walls in 2010? And I should say at the outset, we are not talking about individual aluminum parts that come into the United States, extruded aluminum parts that are then attached to the side of a building one by one, aluminum by aluminum, and framed up the building. And you're not talking about an entire pre-constructed curtain wall? No, Your Honor, we are not. We submit that it would be impracticable to bring in such a piece of machinery. And even then, the order is not on curtain walls. It's on aluminum extrusions. So to get back to your point about 2010, it is true that at that time there was a request about parts, meaning the aluminum extrusion parts, and there Commerce had issued its preliminary decision on the kits exception. And they said, UANDA has not demonstrated that it brings in all of the parts necessary for the kits exception to the anti-dumping and countervailing duty orders. And so for that reason, Commerce said that those individual aluminum extrusion parts were in. We wouldn't be here today if, in fact, at that time Commerce had made a determination on curtain wall units. In fact, the defendant intervenors in this case would not have brought a scope ruling request on curtain wall units if, in fact, Commerce had made a determination in 2010, because it would have been clear to the entire industry. Our argument here is that you don't need to make any new law in this case. There are, in fact, four precedential opinions issued by this court to decide this case, the first being DeFerrico, which is that Commerce is not allowed to expand the precise language of the order to cover products that are not specifically included. And here Commerce reasoned that the language parts, ellipsis, for curtain walls establishes that curtain wall units are within the scope of the order. Yet by using ellipsis… Curtain wall units are part of a curtain wall? Yes, Your Honor. However, it's like saying that the order on ball bearings would extend to cars because cars contain ball bearings. But even putting that logic aside, you have to look at the entire language of that section, which specifically states that subject aluminum extrusions, subject, meaning the first three paragraphs of the scope order that describe how the extrusion process works and the various types of aluminum, subject aluminum extrusions may be described at the time of importation as parts for finished products that are assembled after importation. But the next sentence says, such parts that otherwise meet the definition of aluminum extrusions are included in the scope. So what we're saying is that even though curtain wall units are certainly a part of curtain walls, curtain wall units by themselves do not satisfy the definition of aluminum extrusions. And Congress' rationale here renders the word such parts superfluous, really, because they're ignoring the word such. So I should say that it's also true that curtain wall units, when they come in, they're the aluminum frame filled with glass, rubber, sealant, gaskets. All those things are completely different than aluminum extrusions aside from the aluminum frame. As we put in our brief, we are not contending that if Yuanda or any other company brought in the components to make the aluminum frame separate and apart from everything else and then abrogated the frame in the United States, that duties should cover that product. To me, that certainly satisfies the definition of an aluminum extrusion. But then Congress compounded the error. So even if we can say that the scope language maybe arguably covers curtain wall units under the parts, ellipses, or curtain walls, notwithstanding what we've discussed previously, the Commerce Department failed to give full meaning to the exclusion language. Exclusion language in these scope orders are meant to cover products that would otherwise fall within the umbrella definition of what is included. Otherwise, the exclusion wouldn't be necessary. So here, Commerce violated both the rule that this court established in Erickson, where it added a requirement to the scope that was not in the scope of the order, and it also violated the rule established in Ekstrom, where Commerce rendered specific language in the scope superfluous. You'd agree that they're not finished merchandise, right? Your Honor, they're finished merchandise, absolutely. When a curtain wall unit comes in... I'm sorry. I understand. So you just attach one of those subunits to the building and that's that. Exactly, Your Honor. It's a curtain wall. Right. You've been around town, you've seen the new buildings being put up. When they frame the building in concrete, they embed steel anchors, sometimes they're aluminum anchors. The curtain wall comes in... With one subunit? Just gets hung up. Do the job? Well, one subunit is still a finished product, just like individual Lego is a finished product. Even though that individual Lego is designed specifically to be hooked into another Lego to form either a castle or a building of some sort, the individual curtain wall unit is a part. It's also true that the individual curtain wall unit is like a window. It's a part. I'm sorry, it's a finished part, though. The individual Lego is useful for waking you up in the morning when you step on it. The curtain wall subunit, as far as I can tell, has no utility at all unless it's installed with other subunits to form a completed curtain wall. I would submit neither does a window. You would not need a window but for the fact that you have a building to install the window onto, correct? If there was no building around, you could just look down the street and see the sun, see whether it's raining. If there's a building, though, you need to have the window to be able to see outside. And so a window is also defined in the scope as a finished product. It's, in fact, preceded by the words such as finished windows. And here Commerce failed to really look at whether a finished curtain wall unit is like a window with glass when it is imported. And that's a fundamental failure here to really give true meaning to the exclusion language. Because the exclusion language here is not exhaustive. If it was exhaustive, it would have just said completed at the time of entry, including windows of glass, door frames with glass and vinyl, picture frames with glass paint. But it doesn't. It says such as, meaning Commerce was required to go and analyze whether the product at issue is like or is such as a finished window with glass. And here Commerce didn't do that before they found that the product was within the scope of the order. Finally, Commerce made a greater error in its analysis of our case here where when it was considering the regulatory criteria 19 CFR 351225K1, it failed to give true meaning to what the International Trade Commission determined was the industry examined in this case and whether curtain wall and the curtain wall industry was part of that industry. Moreover, they failed to look at the entire petition where an excerpt from the petition explicitly says that unitized curtain wall units are excluded merchandise. They're non-subject merchandise. And so by failing to look at the full K1 criteria and give full effect to what both the commission did and what the petition had intended to cover, Commerce failed to abide by its regulations. For these reasons, we think that Commerce's ruling is unlawful here. Judge Flaker? I have no questions at this time. Okay. Great. Well, I will reserve the rest of my time for rebuttal unless the court has other questions. Thank you. Thank you very much. Okay, we're keeping separate clocks here, so we're starting here. Okay. Good morning, Your Honors. May it please the court. The trial court's judgment should be affirmed. Commerce's scope ruling gives meaning and effect to the language of the orders on aluminum extrusions when it found that parts for curtain walls, a language that is specifically identified in the scope language, is subject merchandise within the scope of the two orders. Appellants challenged two holdings of the trial court in this case, the first issue being standing, which my colleague did not address in his opening presentation. So I'll proceed to the second issue, which is the issue of the merits of Commerce's scope ruling. There's really no question that these products, these parts for curtain walls, meet the physical description of the merchandise. They contain aluminum extrusions. The fact that the aluminum extrusions may be attached or fastened to or include some sort of infill doesn't mean that they aren't subject to the order. So the fact that we're talking about in some situations an aluminum extrusion frame that's infilled with glass or some other infill material doesn't mean that it somehow becomes something other than aluminum extrusion. The orders specifically talk about the fact that you can refer to a product to its end use or call it something else, but if it meets the physical description of the merchandise, it's subject merchandise unless, of course, it meets one of the two exclusions. One of the parties has brought to our attention this other final scope ruling on finished window kits. Are you familiar with that and wondering how you differentiate the Commerce's conclusion in that case versus here? Everybody agrees that a curtain wall or curtain wall system, the final finished system that's attached to the facade of the building, is the finished product in the industry. Appellants concede no one buys a single curtain wall unit. They are designed to work together. They are often produced pursuant to a contract for an entire building. So when a curtain wall unit is imported or several curtain wall units are imported, that's not enough to meet the kit definition. I don't understand appellants to be arguing that they fall within the kit exclusion because as they concede you can't bring in everything necessarily at once. It's also important to note that the scope request here did not talk about final curtain walls or curtain wall systems. It was limited to parts for curtain walls or curtain wall systems. In fact, Commerce and the Trial Court both expressly acknowledge that to the extent that's a separate question, the WANDA and the appellant should file their own scope ruling request with Commerce, which they've done. So the scope ruling request here was really limited to parts for curtain walls and curtain wall systems. That's what Commerce addressed here. You're leaving out windows. The analogy that the appellant draws, what's the difference between a curtain wall unit and a window infilled with glass. There are two distinctions to be drawn. The first is the scope language itself, which explicitly talks about windows with glass as an example of finished merchandise and doesn't talk about curtain walls. Of course, the examples are examples. They're not intended to be the entire universe, but the fact that the scope language does talk about parts for curtain walls in one place and doesn't talk about curtain wall units as an example of finished merchandise is evidence that there is a difference. As a matter of fact, I can go out and buy a window kit and install it in my house where I broke a window as a complete unit that's on the market as that unit. I can't go out unless I want to put a curtain wall on my house. If I want to put a curtain wall on my house, I have to buy those pieces and assemble the curtain wall in front of the house. The trial court found that distinction relevant too, that a curtain wall unit is designed to work together with other identical curtain wall units in a very specific way that they lock together and are assembled together. That's different from a window with glass which you can buy and put into any house and you don't need other identical merchandise in order for it to serve its function. I just want to briefly address the argument made that Commerce failed to consider all of the K-1 criteria and failing to consider language in the petition. That argument was not made before Commerce. It was not made before the trial court. It was made for the first time. That exhibit from the petition was attached to the appellant's reply brief for the first time. That in and of itself should be sufficient reason for the court not to consider that argument. Even if the court was inclined to consider it, that specific discussion talks about unitized curtain wall systems. We're talking about the system itself, not the parts which were the subject of the scope inquiry here. Even if the court were concerned about that issue, it discusses the different product that was not the subject of the scope request in this case. If the court has no further questions, I would defer the rest of my time to the other appellees. Judge Flager? No questions. Thank you. Thank you, Your Honor. May it please the court. My name is David Spooner and I am counsel for defendant Appelese, the Curtain Wall Coalition, a coalition of three U.S. manufacturers of curtain wall units and systems. Three companies called AGA, Walters and Wolf, and Bagatellos. If I may, I'd like to address just two issues. The first is the merits of Commerce's scope ruling, and secondly, standing, although, of course, plaintiffs did not address standing in their oral argument. The scope, Your Honor, is on its face, of course, covers parts for final finished goods assembled after importation, including curtain walls. If there's any ambiguity as to whether or not curtain wall sections or units are parts for curtain walls, Commerce determined in the investigation that curtain wall units, indeed Planned Pueblanda's curtain wall units, were covered by the scopes of the orders. I should briefly note, plaintiffs in oral argument posited that this ruling during the investigation only covered extruded pieces of aluminum, not curtain wall units. I would recommend that the Court read Commerce's Preliminary Investigation Scope Ruling. I think it's page 1311 of the Joint Appendix, where Commerce finds broadly that Iwanda's quote-unquote unitized curtain wall products are subject to the scope of the orders. There's no language in that Preliminary Investigation Scope Ruling about it only applying to lineals. I'm sorry, lineals being aluminum pieces. The ITC adopted a scope coextensive with Commerce's scope, finding that subject merchandise was commonly used in building and construction projects, including curtain wall projects, and analyzed shipment data for both domestic producers and imports of aluminum extrusions used in curtain walls. The ITC also sent questionnaires, of course, to petitioners, many of whom produced extrusions for use in curtain walls. And I should note, Jang Ho and Iwanda, in their briefs before this Court, and indeed in oral argument, admit that curtain wall units are parts for curtain walls. Under such circumstances, I posit that it was reasonable for Commerce to affirm that curtain wall units and other parts for curtain walls are subject to the scope of the orders. Plaintiffs, nevertheless, point to a list of exclusions, a list that includes windows with glass, and argue that Commerce must exclude curtain wall units because curtain wall units are final finished goods, kind of like windows with glass. Windows and curtain wall units are distinct products, and they're treated separately in the scope. I'd argue that if windows were just like curtain walls, as plaintiffs claim, the scope's references to curtain wall parts and window parts would be redundant. Commerce's decision reasonably gave meaning to this distinction, the fact that they're listed separately in the scope. Nevertheless, putting aside the plain language of the scope and Commerce's findings during the investigation, no one, absolutely no one, and plaintiffs admit this on page 25 of their brief before the lower court, buys a single curtain wall unit. Folks buy a single window all the time, but no one buys a single curtain wall unit. If you need to buy more than one to construct the final finished product, it's a part. I would just like, if I may, to briefly address standing. If you've only got a short time, you might want to rethink that, given that they haven't raised it. I would simply say there's no evidence on the record to contravene the evidence of standing. Thank you, Your Honor. I have to say this. Just let me remind you that people who live in glass houses should not throw stones. Point well taken, Your Honor. And it actually teased up a couple of points for me, which I appreciate. So Your Honor asked, or posited an example of if your window breaks, you will go to Home Depot or Lowe's or a nice small mom-and-pop shop and buy a window. That's a good analysis. That's an analysis that Commerce should have done in this case. Commerce didn't do any of that analysis, so that sort of deals with it. Your Honor, I would respectfully disagree in that there are two scope rulings where Commerce has only looked at commercial construction windows. They haven't looked at the individual purchaser. In fact, the ruling that you cited, Your Honor, was on window kits, which are described as non-weight-bearing, extruded aluminum window frames, sheet aluminum, fasteners, gaskets, glazing sealants, and glass panes. The window wall kits are used by commercial contractors as a fully assembled window wall in large commercial structures such as hotels, airport terminals, etc. They're merely a different term for curtain wall in the industry. Likewise, in an earlier scope ruling that we cited, it's what's called the ribbon wall scope. The difference is that those windows just sit on the frame of the building. They don't hang. They're not like pictures that you hang on the side. They just sit there. That's why they're called something different. The issue for us is that Commerce never did the analysis of whether curtain wall units are like windows with glass that are specifically excluded. They were required to, because of the language of the scope saying, finished goods such as. They didn't go through that analysis. Instead, they said, well, you fall into the umbrella provision that you're included. I would submit that there's a lot of things that probably fall into the umbrella provision that are included, but that Commerce has still, nonetheless, gone through the exclusion criteria to determine whether they apply or not. That's that point. Your Honor, I want to come back to what Mr. Spinner said about the original investigation scope. It's a confusing analysis because there are parts that I quoted to you, which are individual parts of aluminum frame and individual aluminum extruded parts in that same paragraph. So I would say that it's a confusing analysis, and whether Commerce intended to cover it at that point, I'm not entirely sure. But what's put aside by all of that is that the petition specifically excluded it. The ITC never issued Mr. Spinner's client's questionnaire. They didn't respond to any such questionnaires. They didn't come into the ITC investigation. The ITC didn't describe the product in its determination as things that hang on the side of buildings, that you can look through that protect you from winds and rain. They described aluminum extrusions as extruded aluminum pieces that have a variety of end uses. And it is true that curtain wall units are an end use for aluminum extrusions, but being an end use doesn't make you an aluminum extrusion. And that's really what our argument rests on. I would like to just close with the idea that we didn't raise the standing issue. I don't know if you need to get there. We think the standing issue makes it ad venitio and valid, but we think that we went on the scope, and you can rely on past precedent to reverse Commerce here, because Commerce has far exceeded its authority under this scope to extend to a product that was never intended to be covered by the petitioners and never examined by the International Trade Commission. And the plain language doesn't support Commerce's conclusion. Any other questions? Judge Flaker? No. All right, great. Thank you, Your Honor. No questions. Thank you. I thank both counsel.